Wardlaw, J.
dissenting. In the case of Moore & Davis et al., vs. Elijah Byne et al., 1 Rich. 94, I read a dissenting opinion, which was prepared in unusual haste, as the interests of parties in the circumstances of that case urged a speedy decision. Subsequent engagements prevented me from putting that opinion into a satisfactory form before the report of that case was published. I then thought, that before the amendment of our attachment law made in 1844, the sheriff might, at his own risk, even under a foreign attachment, seize goods attached, in the hands of a third person, leaving such person, if he claimed rights, either as owner, or as garnishee in possession, to assert those rights in the mode prescribed by the attachment Act of 1744, or in an action of trespass ; and that there was no more propriety in the court’s interfering summarily to redress a trespass committed by the sheriff under color of an attachment, than one committed under color of an execution.
It is my intention now, not to question the decision then made by the court, as I understood it, but to shew that this case is not embraced by it. That case involved various foreign attachments, and one domestic attachment, which last was against Hust; (see Judge Butler’s report in Moore Davis vs. Byne.) I do not know who was the plaintiff in that domestic attachment, nor upon what *610 affidavit it was founded. That case was argued entirely in reference to the law of foreign attachment, and I think the rules which might be applicable to the various kinds of domestic attachments, received little or no consideration in the court, although the opinion which was delivered contains some remarks intended to shew that the same rules, as to the matter then in hand, were applicable to all kinds of attachments.
In the course of the argument in the present case, I have for the first time heard the affidavit read upon which one of the domestic attachments was founded, and have understood that the three domestic attachments mentioned in the report of this ease, (if not all that were issued against Harmon Hust,) were founded upon like affidavits. The affidavit is such as is required by the 6th section of the county court Act of 1785, (7 Stat. 214,) “ that the debtor intends to remove his effects.” In the case of an attachment founded upon such an affidavit, it is clear, from the words of the statute, as was decided in the case of Chambers & Sadler vs. McKee, 1 Hill, 229, that there can be no garnishee, but that a sheriff of any district may pursue and seize the effects.
The order, which was entered at Edgefield court, March Term, 1845, for the setting aside of various writs of foreign attachment against Harmon Hust and either,or both of the Bynes, in its very terms, is applicable only to the cases of foreign attachment; even if Miller have lost the lien of his first domestic attachment, by suing out a second one on the same cause of action, and pursuing it to judgment, there is nothing in the entry of discontinuance made by the attorney and struck out by him upon the writs m the cases of Boggs and Hall, of which third persons can now take advantage, or which would avail to affect the lien of those writs. If, then, the sheriff had a right to seize Hust’s negroes under Boggs’ and Hall’s domestic attachments, in Nov. 1844, the lien of those attachments still subsists, and they are entitled to the fund now in dispute, in preference to Gardner, the present applicant.
Had not the sheriff this right ?
It will be observed, that the 1st section of the Act of *611 1844, (ll Stat. 290,) relates only to cases of foreign attachment, where the third person shall not on oath claim the property as creditor in possession; as to such attachments as those of Boggs and Hall, the law now is the same that it has been ever since 1785.
In the case of Walton vs. Deignan, 2 N. & McC. 248, the domestic attachment was one of that kind which is founded upon an affidavit that the debtor absconds and conceals himself, fyc., wherein there may be a garnishee; and although there was there no affidavit of the occupant from whose possession the sheriff took the goods, it is plain that the court considered that the sheriff had a right to take the possession, and pointed out the futility of the process if such right did not exist. Our inquiry now concerns the plainer case of an attachment, wherein there can be no garnishee, or levying upon goods in the hands of a third person.
In this case, the sheriff could in no other way have made service of the process, but by seizure ; he could, by no copy delivered, or other means, have exacted any return from the person claiming to be in possession, or have imposed upon him any liability. If he had forborne to seize instantly, the negroes might have been hurried in a rail road car beyond his reach, even during a delay obtained by pretence of time needed for making an affidavit.
Byne’s negroes were seized at the same time, under foreign attachments, and could not then be distinguished from Hust’s ; the sheriff might, therefore, have been a trespasser as to Byne, but his seizure was not the less lawful as to Hust. Our inquiry is now concerning the proceeds of property ascertained and acknowledged to be Hust’s.
Was the sheriff’s right to seize or hold taken away, because one W. H. Byne, who was present at the seizure, has since submitted an affidavit that the negroes were his ? No party to the present proceeding now urges the truth of this affidavit; all now admit, in argument, and have admitted by their acts, that-the property was Hust’s, and that he too was with the negroes shortly before the seizure, and was near at hand when it was made. But looking only to what was represented to the court at the argument ot *612 Moore & Davis vs. Byne et al., it is only that a claim was set up by a third person having equivocal possession of the property which the plaintiff in attachment alleged to belong to the fugitive debtor.
If this must of necessity have stayed the hand of the sheriff, it is only necessary, in order to defeat the remedy intended by the 6th section of the Act of 1785, that a fraudulent debtor, fearing pursuit in his attempt to carry his property beyond the reach of his creditors, should intrust its transportation to some agent, bold and unscrupulous enough to claim it, and, if need be, swear to it. Before such an instrument, the law is powerless to detain the property ; and trusting to the immunity thus procured for his goods, the absent debtor hastens his own escape, knowing that his valuables will speedily follow, and that the truth of his agent’s pretensions will come limping after. The law, I am persuaded, intended not to limit the right of seizure to the case of property in transitu, accompanied by the debtor himself and by him only, but to make the remedy coextensive with the mischief — the right of seizure commensurate with the design of the debtor to remove his effects, as established by the plaintiff’s affidavit. I think negroes may be seized, if they be-left behind, whilst others have been taken off; if they have been prepared for removal, but have not started ; if no evidence of the intention to-remove be found beyond that which exists in the plaintiff’s affidavit; if they be travelling without the control of a superior, or under a driver or overseer ; and if an agent have charge of them, even if they really belong to the person supposed to be agent, but are pointed out as the debtor’s, and the sheriff is willing to take the risk. What the harm of this, more than of taking one man’s property under fi. fa. for another’s debt ? The sheriff is liable to action for any wrong done, and if the property seized belong to a third person, adequate remedy may be had. The right of seizure is essential to preserve the efficacy of that kind of attachment, which was resorted to, to save it from becoming ridiculous and contemptible, the sport of the dishonest, and a reproach to the law.
I have been confirmed in my views by the unfortunate *613 result of the whole "proceedings against Host’s negroes. The diligent creditors, by whose lucky pursuit the property was arrested when fast on the way to foreign parts, have been doomed to see the fruits of their exertions transferred to others more favored by the debtor, whose schemes have been baffled ; and the officer, whose zealous efforts, in. the discharge of what seemed to be his duty, have saved to any of the claimants a subject for contest, is deprived of even the outlay made in the services he has rendered.'